# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **RAYMOND D. GRANTHAM,** | ) |
| Plaintiff, | ) Case No. 2:09CV00060 |
| v. | ) **OPINION** |
| **BRYAN WATSON, WARDEN, ET AL.,** | ) By: James P. Jones<br>) Chief United States District Judge |
| Defendants. | ) |

*Oldric J. LaBell, Jr., Newport News, Virginia, for Plaintiff; J. Michael Parsons, Assistant Attorney General of Virginia, Richmond, Virginia, for Defendants.*

The plaintiff, Raymond D. Grantham, sued the warden and numerous correctional officers at a state prison under 42 U.S.C.A. § 1983 (West 2003), alleging that they were deliberately indifferent to the his risk of harm from sexual assaults he suffered at the hands of another inmate, in violation of his constitutional rights.

The plaintiff's Complaint contains two counts. Count One relates to the sexual assault and Count Two claims that Grantham was falsely accused by prison officials of possessing a weapon in connection with the assault.

The defendants moved for summary judgment in their favor, arguing that the Prison Litigation Reform Act, 42 U.S.C.A. § 1997(e) ("PLRA") (West 2003), bars Grantham's claims because he did not exhaust the prison's administrative remedies

prior to filing his lawsuit. The motion has been denied, and this Opinion sets forth the reasons for that denial.

I

At the time of the incidents alleged in his Complaint, Grantham was an inmate at the Wallens Ridge State Prison, located in this judicial district. During the fall of 2007, Grantham shared a cell with an inmate he referred to as "C. Rouse." (Compl ¶ 5.) According to the Complaint, on September 28, 2007, and October 19, 2007, Rouse raped Grantham at knife point. A few days after the second rape, Rouse threatened to sexually assault Grantham again. Grantham responded by alerting correctional officers about the threat and by telling officers where Rouse had hidden two hand-made knives. Correctional officers separated the inmates and immediately moved Grantham to solitary confinement. Officers accused Grantham, the inmate who sought help, of possessing the unauthorized weapons.

After a hearing, prison officials concluded that it was Grantham, not his alleged attacker, who had possessed the weapons. As punishment, officials sentenced Grantham to solitary confinement. Grantham spent the next several weeks submitting written requests for an "appeal packet" so he could appeal the solitary confinement "verdict." (Pl.'s Resp. Mem. Ex. 2.) Prison officials eventually gave Grantham the

form and after two appeals, the hearing officer's original decision was reversed and the charge was expunged from Grantham's record.

While Grantham appealed his sentence of solitary confinement, he also submitted complaints about the rape to Wallens Ridge officials. Under the Virginia Department of Corrections Offender Grievance Procedure, inmates seeking administrative responses to complaints about prison staff or conditions must use specific forms and adhere to certain procedures. Initially, an inmate must file an informal complaint form. A formal grievance may be submitted once the informal complaint has been filed and addressed by prison staff. Grievances must be submitted within thirty calendar days from the incident in question "except in instances: (1) beyond the offender's control, or (2) where a more restrictive time frame has been established in Operating Procedures. . . ." (Mem. in Supp. of Mot. for Summ. J., Ex 2, p. 7.)

Grantham submitted an informal complaint on December 20, 2007, which detailed how Grantham had informed guards about his cellmate's sexual assaults and alleged that officials had failed to protect Grantham or to properly help him after the rapes. The prison's grievance coordinator responded by stating that the informal complaint exceeded the prison's filing time because it was not filed within thirty days of the incidents. Six days later, Grantham submitted a formal grievance alleging that

correctional officers wrongly charged him with possession of the weapons found in his cell, and that officers had failed to test him for AIDS after the rape. Officials returned this form, stating it was filed too late for administrative action.[1]

In response to the defendants' summary judgment motion, Grantham signed a sworn affidavit in which he stated that he had requested grievance forms "early in November 2007" and that correctional officers responded "they didn't have any or would bring them later but did not." (Pl.'s Resp. Mem. Ex. 3, ¶ 7.) Grantham stated that in November 2007, he had only one "informal complaint" in his possession, which he used to request his appeals packet. (*Id.*)

In addition to his affidavit, Grantham also submitted several exhibits consisting of Inmate Request for Information forms, which he had previously given prison officials. In one form, submitted twelve days after his untimely December grievances, Grantham stated that during the past two weeks he had repeatedly asked guards for an informal complaint form. The guards on duty, Grantham wrote, stated they did not have any forms and they would bring him some at a later time. The guards, however, failed to bring him the forms. Prison officials responded to

---

[1] In their motion, the defendants state Grantham's grievances alleged the rape occurred October 28, 2007. (Def.'s Mem. in Supp. of Mot. for Summ. J. 5, ¶¶ 9-10.) Grantham's grievances state, however, that Grantham reported the prior rapes and the threats against him on October 28, 2007.

Grantham's written request by stating that the grievance office did not issue informal complaint forms. The office instructed Grantham that when supervisory officers performed their rounds, Grantham should speak with them about his request.

The defendants argued that the PLRA should apply to this case because Grantham had failed to exhaust his administrative remedies. Grantham's sworn affidavit was immaterial to the question at hand, the defendants argued, because Grantham had failed to mention his inability to get grievance forms when he filed complaints on December 20, 2006, and December 26, 2006, and in other, later correspondence with prison officials.

III

Under Rule 56 of the Federal Rules of Civil Procedure, a district court may grant summary judgment to a party if pleadings, discovery evidence, and affidavits show the matter may be determined as a matter of law because no genuine issue of material fact exists. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When a district court considers a motion for summary judgment, the facts are viewed in the light most favorable to the non-movant. *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party

to show that there are genuine issues of material fact." *Id*. But, "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986))

The PLRA requires the exhaustion of all administrative remedies before a prisoner may file an action challenging prison conditions under federal law. *Woodford v. Ngo*, 548 U.S. 81, 83-85 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The statute's exhaustion requirement is mandatory and applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In *Woodford*, the Supreme Court held that exhaustion of administrative remedies requires a prisoner to adhere to "critical procedural rules" for grievances so officials may properly respond to the prisoner's complaints. 548 U.S. at 90. A prisoner cannot exhaust administrative remedies by failing to adhere to deadlines or required procedural steps so that "remedies that once were available to him no longer are." *Moore*, 517 F.3d at 725.

Yet, a court may excuse a prisoner's failure to exhaust an administrative remedy if a prisoner "through no fault of his own, was prevented from availing himself of" the remedy. *Id*. at 725. This include instances when prison officials interfere with a prisoner's ability to properly use or follow the administrative process. *Bacon v. Greene*, 319 F. App'x 256, 257-58 (4th Cir. 2009) (unpublished) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) and *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001)).

Although a prisoner has the burden of properly following prison grievance procedures, the Supreme Court has held that under the PLRA, an inmate's failure to exhaust administrative remedies is an affirmative defense that must be pled or raised by the defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Because of this, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id*. Instead, the defendant must prove the inmate failed to exhaust administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005) (citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)).

The defendants' Motion for Summary Judgment was denied because a genuine issue of material fact exists as to whether Grantham requested grievance forms in early November and whether the defendants failed to provide Grantham with the forms.

On December 20 and 26, 2007, Grantham filed grievances regarding the October 28, 2007 threats, his complaints to guards and Rouse's earlier assaults. Officials stated both complaints were invalid because they were filed after the thirty-day time limit. Typically, this evidence would suffice to support the defendant's assertion that the PLRA barred Grantham's claims. But here, Grantham has also asserted that he asked for grievance forms "early in November 2007" while in solitary confinement. (Pl.'s Response Ex. 3, ¶ 7.) And, officers responded by saying "they didn't have any or would bring them later but did not." (*Id*.) Thus, Grantham has alleged that officials interfered with his ability to properly follow the prison's administrative remedies and procedures.

Grantham's affidavit creates a material question of fact because his sworn statements indicate that prison officials prevented Grantham from properly "availing himself of" the prison's administrative remedies. *Moore*, 517 F.3d at 725. If the guards did fail to give Grantham the required forms, Grantham's failure to comply with prison rules and the PLRA's requirements could be excused since the administrative process that existed "on paper [became] unavailable in reality." *Kaba*, 458 F.3d at 684.

The defendants bear the burden of proving that Grantham failed to properly exhaust his administrative remedies. *Jones*, 549 U.S. at 216. Instead, the defendants

questioned Grantham's credibility. The defendants noted that Grantham failed to assert a denial of access to grievance forms in his Complaint and that when Grantham actually filed his grievances, he never mentioned the denials of his requests. The defendants also allege that Grantham's affidavit, unlike his Complaint, is vague and lacks details about his denied requests. Further, the defendants note that while Grantham stated he "began asking for grievance forms early in November 2007, [Grantham failed] to specify dates that any subsequent requests were made. . . ." (Def. Reply Mem. 4.) These contentions do not serve as evidence that positively rebuts Grantham's claim that prison officials denied his request for grievance forms in November 2007.

In addition, the defendants failed to discuss or acknowledge that the prison's thirty-day deadline has a broad exception, which permits late filing in instances "beyond the offender's control." (Mem. in Supp. of Mot. for Summ. J., Ex 2, p. 7.) Certainly, denial of access to forms by correctional officers would be an instance beyond Grantham's control.

The defendants assert that Count Two should be dismissed because Grantham did not file grievances about the conduct of these individual officers. These arguments ignore the possibility that if guards gave Grantham grievance forms when he requested them "early in November 2007," Grantham could have complained

about individual officers. (Pl.'s Response Ex. 3.) For purposes of this motion, it is irrelevant that Grantham's administrative appeal did not include allegations about individual officers. At this stage in the proceedings, Grantham's sworn statement that officers denied him access to grievance forms, which could have permitted him to complain about individual officers, creates questions of material fact.

The defendants also argue that the Inmate Information Request forms filed by Grantham between November 14, 2007, and January 2008, demonstrate that he was not denied access to informal complaint or regular grievance forms. That conclusion, however, must be left to the jury. The forms neither prove nor disprove that Grantham requested grievance forms in early November. In fact, after reviewing the forms, a fact-finder might be inclined to give credence to Grantham's affidavit because the January 7, 2008 form demonstrates that at other times, prison officials had ignored Grantham's requests for grievances forms and thus, Grantham's assertion that he was denied grievance forms in early November 2007 is plausible.[2]

---

[2] Grantham argues that additional issues exist that could overcome the PLRA's bar to his claims, including that he was suffering from "an impaired mental condition" while in solitary confinement, which contributed to his failure to meet the filing deadlines. (Pl. Resp. Mem. 3.) In view of my ruling, however, it is not necessary for me to consider these other grounds.

DATED: April 30, 2010

/s/ JAMES P. JONES
Chief United States District Judge